OPINION
In 1973, appellant, Roger Johnson, and appellee, Elizabeth Johnson were divorced. Thereafter, appellant accumulated a child support obligation for arrearages only. In 1989, the trial court issued a seek work order, ordering appellant to make six contacts per month and report his efforts to appellee, the Guernsey County Child Support Enforcement Agency.
On January 5, 2000, appellee filed a motion for appellant to show cause as to why he should not be held in contempt of court for failing to notify appellee of his current address pursuant to a judgment entry filed March 18, 1987. A hearing before a magistrate was held on February 2, 2000. By decision filed February 3, 2000, the magistrate found appellant in contempt for failing to report his address change.
Appellant filed objections on February 15, 2000. Hearings were held on June 6, 2000 and September 1, 2000. By opinion/judgment entry filed October 26, 2000, the trial court denied the objection pertaining to the address change and found appellant in contempt. The trial court sentenced appellant to two days in jail, suspended on the condition appellant keeps appellee informed of his address.
Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I "THE TRIAL COURT ERRED BY FINDING APPELLANT IN CONTEMPT OF COURT FOR FAILING TO REPORT AN ADDRESS CHANGE TO THE CHILD SUPPORT ENFORCEMENT AGENCY."
 I
Appellant claims the trial court erred in finding him in contempt for failing to keep his address current with appellee. We agree.
An appellate court's standard of review of a trial court's contempt finding is abuse of discretion. State ex rel. Celebrezze v. Gibbs
(1991), 60 Ohio St.3d 69. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217.
Pursuant to R.C. 2705.02(A), acts in contempt of court include "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer." In its appellate brief at 1, appellee discusses court orders, quoting 17 American Jurisprudence 2d (1990), Contempt, Section 157, as follows:
 `. . . before a person may be held in contempt for violating a court order, the order should inform him in definite terms as to the duties thereby imposed upon him, and the mandate alleged to be violated must be clearly expressed rather than implied. Punishment for contempt can only rest on a clear, intentional violation of a specific, narrowly drawn order; specificity is an essential prerequisite of a contempt citation.'
Appellant was found to be in indirect contempt of court for failing to keep his address current with appellee pursuant to a March 18, 1987 judgment entry which ordered the following:
 "The Obligor is hereby ordered to notify the Court in writing of your current mailing address, your current residence address, and of any changes in either address, immediately after such change occurs until further order of the Court.
 "YOU ARE HEREBY NOTIFIED PURSUANT TO R.C. 3113.21(G)(3) THAT A WILLFUL FAILURE TO SUPPLY A CORRECT ADDRESS OR RESIDENCE ADDRESS, OR TO PROVIDE THE COURT WITH ALL CHANGES IN EITHER ADDRESS, IS CONTEMPT OF COURT."
In its opinion/judgment entry filed October 26, 2000, the trial court set forth the undisputed interpretation of the evidence as follows:
 "2) A) The Court finds that Mr. Johnson had written monthly (with his return address on the envelope) to the Child Support Enforcement Agency to report that he was seeking work, but was unemployed.
 "B) The Court finds that the listing of a return address on the envelope maintained in the `hard file' of the Child Support Enforcement Agency does not comply with Ohio law that requires the Obligor to provide notice of change of address in writing.
 "C) The Court finds that to place such an administrative burden on the Child Support Enforcement Agency is unreasonable administratively."
It is clear from the evidence that appellee keeps a "hard case file" on each obligor, and the monitoring of payments and seek work forms is not done by caseworkers, but by cashiers. T. at 26. The seek work forms are logged into a computer and filed in a "seek work file" for each obligor. T. at 26-27. The caseworkers rely on the computer to see if payments are made or if seek work forms are turned into appellee. T. at 26, 35-36. Caseworkers do not check to see if the actual seek work forms within the seek work files contain the addresses of the obligors. T. at 34-36. Appellant's seek work file reflected his address changes. T. at 29-33. In particular, the last "default" letter sent to appellant was sent to his Elmwood address in Grandview, Ohio, a suburb of Columbus. T. at 34, 89; Plaintiff's Exhibit 2. Appellant responded to this letter. T. at 89-90; Plaintiff's Exhibit 4. Said address has been in the seek work file since 1999. T. at 29.
Three times appellant changed his address and all three changes are found in his seek work file on the return address portion of the envelopes. T. at 28-33, 79-84. Christina Walker, an investigator for appellee, testified it was too great a burden to look at the hard case files to see if obligors have complied with their orders:
 "Q. Now, if the envelope was kept is it possible — is it feasible for a case worker to go and look at every envelope that comes in every week or every two weeks or every month?
 "A. No. There would be entirely too many to go through because you would have to, if they come in with just his name, the absent parent's name, you have to look it up in the computer to see what case it was and to look at the address to see if that's what we actually had on file." T. at 68.
The only investigation as to appellant's missing current address was the use of the hard case file, but by the time it was utilized, appellant's case had already been sent to a locator system which in turn sent the case to a collection agency. T. at 74-75. It would seem only logical to check all avenues before embarking on a full scale locator/collection investigation as was done sub judice. Id.
In its opinon/judgment entry, the trial court found appellant's actions did not technically comply with "Ohio law":
 "The Court, finding that Roger L. Johnson had provided his address on the return labels of his envelopes, (while not complying with Ohio law and in contempt of this Court's prior Orders as to supplying notice of change of address to the Child Support Enforcement Agency, finds that the fact the addresses were available in the files of the Child Support Enforcement Agency mitigates the punishment in this case. * * *"
Such a bright line approach is not compatible with the standard applicable in contempt cases. The use of the return address method is a conventional approach to letter etiquette, but it may well be a less than orthodox approach to fulfilling a legal obligation. It does not, however, reach the standard of a "clear, intentional violation of a specific, narrowly drawn order."
Based upon the facts presented, we find the trial court erred in determining appellant's lack of sophistication in notifying the court was tantamount to contempt of court.
The sole assignment of error is granted.
The judgment of the Court of Common Pleas of Guernsey County, Ohio is hereby reversed.
By FARMER, P.J. HOFFMAN, J. and BOGGINS, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Guernsey County, Ohio is reversed. Costs to appellee, the Guernsey County Child Support Enforcement Agency.